IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

FILED
JUN 02 2020
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

EDMUNDO RUIZ Jr.,

Defendant,

vs.

Crim.No. 3:08CR304-001

UNITED STATES OF AMERICA,

Plaintiff.

EMERGENCY
MOTION FOR COMPASSIONATE REDUCTION IN SENTENCE PURSUANT TO
THE FIRST STEP ACT OF 2018, AND 18 U.S.C. 3582(c)(1)(A)

## I. RELIEF SOUGHT.

Edmundo Ruiz Jr., pro se ("Ruiz") in this action, moves this Court for an order pursuant to Section 603(b) of the First Step Act ("FSA"), and 18 U.S.C. 3582(c)(1)(A), for a Compassionate Reduction in the 240 month, sentence imposed on July 13, 2011, to reflect a MODIFIED sentence of 120 months, followed by 10 years Supervised release, or in the ALTERNATIVE, a reduce the sentence to allow Ruiz to serve the remainder of his sentence on home incarceration without eletronic monitoring on such condictions as the Probation Department deems necessary, to be followed by the term of Supervised Release previously imposed by the Court. In Support Ruiz states:

## II. GROUNDS FOR RELIEF.

In the case sub judice, Ruiz argues that his Court should GRANT his a Compassionate Reduction in his sentence based on a combination of factors that are if not individually, collectively Extraordinary and Compelling, not limited to but including:

(a). Ruiz's sentence of 240 months of imprisonment is extraordinary for the manner and way is was imposed. Ruiz did not receive his 240 month sentence because of a Judge's assessment of his culpability, or the harm caused. Rather Ruiz received such a long sentence due to a mandatory minimum peanlty that no loner exist. If Ruiz has been sentenced today, he could not have faced a sentence requiring his imprisonment be not less than 240 months. That is because Congress amended 21 U.S.C. 841(b)(1) a statute containing the mandatory minimum punishment that Congress found to be unfair, with the enactment of the First Step Act. See P.L. 115-391, 132 Stat. 5194, at § 401(a) (Dec. 21, 2018);

(b). Ruiz, has serious health conditions such as, high blood pressure, high cholesterol , and a weakened immune system due to the illness and medication he is taking, as well as a history of asthma, since being a child. Ruiz medical issues in wake of the the national health Pandemic, places him at a high risk should he contract the Covid-19, in FCC Forrest City, where there is no room for Social Distencing in the Dorm, and the fact that this prison has one of the Highest Covid-19 outbreaks in the Bureau of Prisons as of May 15, 2020; And

(c). Ruiz Post conviction rehabilitative efforts. (Attached pages 9-10)

III. STANDING TO BRING MOTION AND JURISDICTION OF COURT TO ENTERTAIN THIS PROCEEDING.

Among the Criminal Justice reforms implemented by the First Step Act, Congress amended 18 U.S.C. 3582(c)(1)(A) to allow a defendant to move the District Court for Compassionate release after exhusting the Bureau of Prisons ("BOP") compassionate release process. The statute now reads:

> "the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, which ever is earlier, may reduce the term of imprisonment....."

Court have found that "Exhaustion occurrs when the BOP denies a defendant's application or lets thirty days pass without responding to it." See, BROWN V. UNITED STATES, 411 F.Supp.3d 446, 452 (S.D.Iowa 2019); UNITED STATES V. MONDACA, 2020 U.S.Dist. LEXIS 37483, at *5 (S.D.Cal. March 3, 2020); UNITED STATES V. ATWI, 2020 U.S. Dist. LEXIS 68282, at *8-9 (E.D.Mich. April 20, 2020).

A. Ruiz has Exhaustion his remedy and has Standing to bring this motion.

In the case sub judice, Ruiz filed a request for a Reduction of his Sentence under the Compassionate Release statute, with Warden D'Wayne Hendrix at the Federal Correctional Institution Forrest City, Arkansas, on two different occasions:

The First, on November 23, 2019, which was returned, and resubmitted on November 30, 2019, (Attached pages 1 and 2). Ruiz even filed a informal resolution and was instructed to write the Case Manager Coordinator, (Attached page 3), I followed that instruction, (Attached page 4). I receive no response. So, Ruiz under the circumstance has exhausted his claim. See 18 U.S.C. 3582 (c)(1)(A)( courts can reduce a sentence upon "lapse of 30 days from the receipt of such a request by the warden", ); and

Secondly, with the introduction of the Covid-19 disease at FCC Forrest City-low, Ruiz filed a new request for a reduction on April 8, 2020 for a reduction under the compassionate release statute, with Warden D'Wayne Hendrix at the Federal Correctional Complex Forrest City, Arkansas. (Attached page 5).

18 U.S.C. 3582(c)(1)(A)( court can reduce a sentence upon "lapse of 30 days from the receipt of such a request by the warden").

Following, the submission of the April 8, 2020, Request to the Warden. The Warden issued a memorandum instructing that inmates should not submit request to staff, and that all inmates would be considered for release or home detention, on April 14, 2020. Thirty days has lapse from that date and the warden still has not responded. See, PAVEY V. CONLEY, 170 Fed. Appx. 4, 8-9 (7th Cir. 2006) (Prisoners reliance of assurances of Prison Officials that issue would be considered without need to file request).(Attached Exhibit pgs. 6-7)

Ruiz, has submitted his request(s) and have not received a response from the warden, inaddition to being instructed not to submit request, and more than 30 days has passed since those submissions. This Court has jurisdiction to hear this motion.

IV. DISCUSSION

With the changes made to the compassionate release statute by the First Step Act (FSA), courts need not await a motion from the Director of the BOP to resentence prisoners to time served or any other modification under 18 U.S.C. 3582(c)(1)(A) for "extraordinary and compelling reasons", and the reasons that can justify resentencing need not involve only medical, eldery, or family circumstances.

A. Through the First Step Act, Congress changed the process for compassionate release based on criticism of BOP's inadequate use of its authority, returning to the Judiciary the authority to act on its own to reduce sentences for "extraordinary and compelling reasons."

Prior to Congress passing the FSA, the process for compassionate release under 3582(c)(1)(A) was as follows: the U.S. Sentencing Commission set the

criteria for resentencing relief under 3582(c), and the only way a sentencing Court could reduce a sentence was if the BOP Director initiated and filed a motion in the sentencing court. See PL 98-473 (HJRes 648), PL 98-473, 98 Stat 1837 (Oct. 12, 1984). If such motion was filed, the sentencing court could then decide where "the reduction was justified by 'extraordinary and compelling reasons' and was consistent with applicable policy statements issued by the Sentencing Commission."Id. So even if a federal prisoner qualified under the Commission's definition of extraordinary and compelling reasons, without the BOP Director's filing a motion, the sentencing court had no authority to reduce the sentence, and the prisoner was unable to secure a sentence reduction. This process meant, practically, the BOP Director both initiated the process and set the criteria for whatever federal prisoner's circumstances the Director decided to move upon. (n.1)

Leaving the BOP director with the ultimate authority for triggereing and setting the criteria for sentence reductions under 3582(c)(1)(A) created several problems. The Office of the Inspector General found that the BOP failed to: provide adeguate guidance to staff on the criteria for compassionate release, to set time lines for reviewing compassionate release request, to create formal procedures for informing prisoners about compassionate release, and generate a system for tracking compassionate release request.

---

(n.1) The Department of justice has recognized that, prior to the passage of the FSA, BOP (and not the Commission) functionally had final say on what constituted an "extraordinary and compelling reason" for a sentence reduction, because only the BOP could bring a motion under ther terms of 3582(c)(1)(A). See Dep't of Justice, Letter to U.S.Sentencing Commission Chairman Hinojosa (July 14, 2007)(noting that because Congress gave BOP the power to control which particular cases will be brought to a court's attention, "it would be senseless [for the Commission] to issue policy statements allowing the court to grant such motions on a broader basis than the responsible agency will seek")

As a result of these problems the OIG concluded that the"BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." See GENERALLY Stephen R. Sady & Lynn Deffebach, Second Look Resentencing under 18 U.S.C. 3582(c) as an Example of Bureau of Prisons Policies That Result in Overincarceration 21 FED. SENT. RPTR. 167 (Feb. 2009).

Congress heard those complaint. In late 2018, Congress passed the FSA, part of which transformed the process for Compassionate release under 3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at §603 (Dec. 21, 2018) Section 603 of the FSA changed the process by which 3582(c)(1) compassionate release occurs: instead of depending upon the BOP Director to determine an extraordinary circumstance and then move for release, a court can now resentence "upon motion of the defendant", if the defendant fully exhaust all administrative remedies, "or lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. 3582(c)(1)(A). Once a defendant who has properly exhausted files a motion, a Court may, after considering the 18 U.S.C. 3553(a) factors, resentence a defendant, if the Court finds that extraordinary and compelling reasons warrant a reduction.

B. Congress intended for the district Courts to reduce sentences for prisoners on the bases of extraordinary and compelling reasons not limited to medical, family, or eldery circumstances under the FSA as it did when Congress originally enacted §3582 in 1984.

The effect of the new changes made by the FSA is to allow federal judges the ability to move on a prisoner's compassionate release application even in the face of BOP opposition or its failure to respond to a prisoner's request

for compassionate release in a timely manner.

Just as when Congress first enacted section 3582 as part of the Comprehensive Crime Control Act of 1984. Section 3582, allowed a District Court to modify a final term of imprisonment in four situation, the broadest which is relevant here. A sentencing Court can reduce a sentence if and whenever "extraordinary and compelling reasons warrant such a reduction. 18 U.S.C. 3582(c)(1)(A)(i). In 1984, Congress conditioned the reduction of sentenced on the BOP Director filing an initial motion in the Sentencing Court; absent such motion , sentencing courts had no authority to modify a prisoner's sentence for extraordinary and compelling reasons.

While congress never defined what constitutes and "extraordinary and compelling reason" for resentencing under 3582(c). Legislative history gives an indication of how Congress though the statute should be employed by federal Courts. S. Rep. No. 98-225, at 52, 53 n.74, and 56 (1983).

Congress, intend to give the Federal Courts an equitable power that would be employed on a individual basis to correct a fundamenatlly unfair sentence, that was not limited to medical or elderly release; if extraordianry and compelling circumstances were present, they could be used to "justify a reduction of an unusually long sentence". S.Rep. No. 98-225, at 55-56.

Against that backdrop, the new changes made by Congress, were in an effort to expand the use of compassionate release sentences under 3582(c)(1)(A). Congress labeled these changes, "Increacing the Use and Transparency of Compassionate Release" 164 Cong. Rec. H10346, H10358 (2018)(emphasis added)

As some federal judges have recognized their power to order reductions of sentences even in the face of BOP resistance or delay in the processing

of applications. UNITED STATES V. CANTU, 2019 WL 249823 (W.D. Texas June 17, 2019); UNITED STATES V. MONDACA, 2020 U.S.Dist. LEXIS 37438, at *5 (S.D.Cal. March 3, 2020)(citing BROWN V. UNITED STATES, 411 F.Supp. 446, 452 (S.D.Iowa 2019). The legislative history leading up to the enactment of the FSA establishes that Congress intended the judiciary not only to take the role that BOP once held under the pre-FSA compassionate release statute as the essential adjudicator of compassionate release request, but also grant sentence reductions on the full array of grounds reasonably emcompassed by the "estraordinary and compelling" standard set forth in the applicable statute.

C. The Statutory text defines judicial sentence reduction authority around "extraordinary and compelling reasons," determined by the Court's.

Once a prisoner has properly exhausted his remedy and filed his motion in the sentencing Court, a federal Judge posses authority to reduce a sentence if and whenever the court finds "extraordinary and compelling reasons warrant such a reduction". The Court must consider the 18 U.S.C. 3553(a) sentencing factors in reducing any sentence, and any reduction of a sentence that a court orders must also be "consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. 3582(c)(1)(A).

It is first worth noting that Congress did not define "extraordinary and compelling reasons", and the United States Sentencing Commissions creation of a catch-all provision for compassionate release under U.S.S.G 1b1.13, application note (1)(D), which states:

> "Other Reasons.- As determined by the Director of the Bureau of Prisons, there exist in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions(A) through (C).

The dependance on BOP in this policy statement is out-dated and part

old procedure, that is not inconsistent with the FSA's amendment to 3582(c)(1)(A). Application note (1)(D) can no longer limit judicial authority to cases with an initial determination by the BOP Director that a prisoner's case presents extraordinary or compelling reasons for a reduction, because the FSA has expressly allowed courts to consider and grant sentence reductions even in the face of an adverse or unresolved BOP determination concerning whether a prisoner's case is extraordinary or compelling. 18 U.S.C. 3582(c)(1)(A), as amended by P.L. 115-391 §603 (Dec. 21, 2018)

Ergo, with the passage of the FSA, Congress decided that federal judges are no longer constrained or controlled by how the BOP Director sets its criteria for what constitutes extraordinary and compelling reasons for a sentece reduction. Consequently, those sections of the application notes requiring a BOP determination or motion are not binding on courts. See, STINSON V. UNITED STATES, 508 U.S. 36, 38 (1993)("We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritive unless it violates the Constitution or a federal statute, or is inconsistent with, or plainely erroneous reading of that guideline).

D. DEFINITION OF WHAT CONSTITUTES EXTRAORDINARY OR COMPELLING REASONS.

In the absence of a clear definition by Congress or the United States Sentencing Commission. The District Courts themselves have the power to determine what constitutes extraordinary and compelling means. In CANTU, supra, 2019 WL 249823, the Court relied on Black's Law Dictionary to define "extraordinary as "[b]eyond what is usual, customary, regular, or common" and "compelling" as "so great that irreparable harm or injustice would result if [the relief] is not [granted]."

Courts has found this definition comports with the FSA's purpose. UNITED STATES V. BROWN, 2019 U.S. Dist. LEXIS 175424, at *7 (S.D.Iowa October 8, 2019); UNITED STATES V. RODRIGUEZ, 2020 U.S.Dist. LEXIS 58718, at*17 (E.D.Pa 4/1/2020)

V. ARGUEMENT(S)

A. RUIZ HAS EXTRAORDINARY AND COMPELLING REASONS WHY HIS SENTENCE SHOULD BE REDUCED.

Ruiz has properly exhausted his claim for a reduction of his sentence under the compassionate release provision, as shown in Section III, supra. Further Ruiz presents this Court with (3) three claims when viewed in combination, amounts to extraordinary and compelling reasons for reducing his sentence.

1. Ruiz has extraordinary and compelling reasons justifying a sentence reduction.

Ruiz's current sentence presents "extraordinary and compelling reasons" for three reasons: First, Ruiz reseaved an usually long sentence under a statutory mandatory minimum provision that Congress has since found to punitive but has not made retroactively applicable. See 21 U.S.C. 841(b)(1), as amended by P.L 115-391, 132 Stat. 5194, at §401(a)((1) and (2) (Dec. 21, 2018). Second, Ruiz suffers from High blood pressure, High cholesterol, a history of asthma, and a weakened immune system due to the medication he is taking. All conditions that place him at greater risk from contracting Covid-19, that Ruiz is unable to properly guard against infection while incarcerated. And Third, Ruiz has a good record of rehabilitation showing that, if released, he is not danger to the public.

(i). Congress has "reduced and restrict[ed]" enhanced sentencing for prior drug felonies and violent felonies.

With passage of the FSA, Congress concluded that punishments arising from the use of non-violent prior convictions and minor drug convictions for enhanced sentencing under 21 U.S.C. 841(b)(1) and 21 U.S.C. 851(a) were to punitive and unfair.

Further Congress concluded that for those offenders which qualify for an enhanced sentence under 21 U.S.C. 841(b)(1) and 21 U.S.C. 851(a), the enhanced mandatory minimums for 1 prior to be 20 years, and for 2 prior conviction to be life, were likewise to punitive and unfair.

It should not be appearrant in Ruiz's case case, where he received a mandatory minimum of 20 years for his offense of conviction, following a plea of guilty. The sentencing Judge was bound by the statutory mandatory minimum sentence which limited sentencing discretion.

A absent of discretion under the old law, makes this case extraordinary and compelling for a sentence reduction, with the proper exercise of sentencig discretion.

Although, Congress fail to make the changes to 841(b)(1), retroactively applicable to cases in which the sentence was imposed prior to the FSA's enactment. See P.L. 115-391, 132 Stat. 5194, at §401(c)(Dec. 21, 2018). Had Congress made the changes retroactively appliable to all, every defendant sentenced to an enhanced mandatory minimim pursuant to 21 U.S.C. 851(a) and 21 U.S.C. 841(b)(1) offenses would have been categorically eligible for sentencing relief. By contrast, those sentenced under the enhanced mandatory mimimum sentencing provision and seeking relief under the compassionate release provision must establish estraordinary and compelling reasons individually in order to be

eligible for relief. The fact that Congress chose to forclose one avenue for relief, does not mean it shose to foreclose all means of redressing draconian sentences imposed under a enhance peanlty, as recognized in UNITED STATES V. YOUNG, 2020 U.S. Dist. LEXIS 37395 (M.D.Tenn. March 4, 2020)(Collecting cases from other Courts), and nothing about Congress's decision to pass prospectively-only changes to section 401(b)(1); 21 U.S.C. 841(b)(1), prevents this Court for, resentencing Ruiz under the compassionate release statute on the basis of individualized extraordinary and compelling reasons. UNITED STATES V. CANTU, 2019 WL 249823 (W.D.Tex. June 17, 2019).

(ii). Covid-19 Pandemic, with Ruiz's Medical Condition makes him Vunerable to death and other serious injuries.

Ruiz has as set forth above and in this motion, has been diagnosed and suffers from a number of medical conditions including: High blood pressure; High Cholesterol, a weakened immune system due to the medication(s) called Lisinopril, Atorvastatin, Neproxen, and Asprin, (Attached Exhibit pg. 8 and 10), and a history of Asthma. (n.2)

America is in a unprecedented pandemic. Covid-19 has paralized the entire world. The disease has spread exponentially, shutting down schools, jobs, abd sports, and life as we have known it. It has killed to this date almost 1,000,000 Americans and infected millions more, and thatnumber is still growing. At this point, there is no approved cure, treatment, or vaccine to prevent it. People with preexisting medical conditions-like Ruiz faces a high risk of dying or suffering severe health effects should he contract the disease.

---

(n.2). Ruiz cannot obtain his medical records due to the Institutional lockdown. But provide a copy of the medications he is currently taking. Ruiz, is in need of the Assistance of Counsel to obtain his Medical Records and in litigating this motion.

The Covid-19 disease is a highly contagious disease and respiratory infection and is particularly dangerous for peole who have underlying medical conditions like lung disease or high blood pressure, diabetes and other illnesses that has compelled court to GRANT reductions. See, UNITED STATES V. SMITH, 2020 U.S.Dist. LEXIS 64371, 2020 WL 1849748, at *1, *4 (S.D.N.Y. April 13, 2020); UNITED STATES V. COLES, 2020 U.S.Dist. LEXIS 72327, at *2 (C.D. Ill. April 20, 2020); UNITED STATES V. HART, 2020 U.S.Dist. LEXIS 62433, at *5 (M.D.Pa. April 9, 2020); UNITED STATES V. ATWI, 2020 U.S.Dist. LEXIS 68282, at * 10 (E.D.Mich April 20, 2020).

Ruiz, avers that prison is a very dangerous place due to my vunerability to Covid-19, especially where his place of incarceration, at FCC Forrest City-Low has become a breeding ground for the disease, and is now among the top-3 in cases in the entire Bureau of Prisons.

Many of the recommendations to prevent the infection while in custody are impossible and unfeasible, because the BOP staff works in both positive and negative Covid-19 units, in addition to goin out beyond the prison gates and bringing such infestions into the prison. The prison living conditions does not allow for social distancing. In FCC Forrest City, there are approx. 156 inmates in a dorm 24 hours a day, 6 urinals, 6 towlets, 12 showers in which only 7 work , and since March the number of cases continues to grow. Ruiz has been blessed so far not to have contracted the infection.

Yet, it is only a matter of time before the infection finds its way to Ruiz, for which he is in no way in a position to adequately protect himself against the infection in prison.

(iii). Ruiz has served over half of his Sentence and has taken several Rehabilitative classes.

Ruiz, in this case has served 12 years of the 20 year sentence, with a release date of Janurary 1, 2026, with good behavior.

Ruiz, has while serving this sentence obtained his G.E.D., along with several other rehabilitative classes. (Attached Exhibit pages 9 ). Although, Ruiz has had (5) five incident infractions in over 12 years, all infractions were none of violance or raises a concern about recidivism.

Ruiz is over 42 years of age and recidivism is far less likely. UNITED STATES V. MITCHELL, 2020 U.S.Dist. LEXIS 40150, at *12 (N.D.Ill. March 9, 2020)

A. Ruiz is not a danger to others or the Community.

Ruiz is not a danger to the community, while the offense of conspiracy may appear to be serious, it should not bee classified as such. Ruiz has only 7 criminal history points from 3 prior convictions. Ruiz is not a threat to any of his 15 co-defendants or anyone in the public. Ruiz accepted responsibility for his role in the offense charged and has served over 50% of the time given that is sufficient to make corrective measures to curb his criminal thinking.

Ruiz prays that the Court find that he is not a danger to the community during the pandemic, because he has a home to return to- where he can self quarantine-. Further, Ruiz would like the court to note that he has a adequate reentry plan that can be verified by the U.S.Probation Office.

B. A Sentence reduction would be consistent with 18 U.S.C. 3553(a) factors.

Ruiz, avers that the §3553(a) factors does not bar a reducted sentence in that:

First, Ruiz's criminal history is not extensive and mostly comprised of low level criminal activity. Ruiz has demonstrated a level of Rehabilitation and good conduct over a period of time.

Second, the need for the sentence. Ruiz has served over 50%, 12 years to be exact on a 20 year sentence not considering good time, when the new minimum sentence he could have received is sentenced today would have been 15 years and not 20. The 12 years of incarceration is long enough to reflect the seriousness of the offense, promote respect for law, provide just punishment for the offense, and this is in additions to a consideration of Ruiz medical needs, that the sentence may interfere with Ruiz ability ot get medical care or avoid death.

Finally, theneed to avoid unwarranted sentence disparities. Out of 15 co-defendants, Ruiz received a sentence that is as twice the time received by others, of the 15 co-defendant only 2 remain incarcerated to this day for the offenses committed. Granting this motion would sufficiently resolve any sentence diparity that currently exist.

## VI. CONCLUSION

Ruiz has served over half of the sentence originally imposed. But his sentence did not include incurring a great unforseen risk of severe illness or death. For this reason Ruiz prays that the Court GRANT the motion, and REDUCE the sentence to 15 years on all counts that would make him eligible for release to home confinement; Or Require Ruiz to serve the remainder of his sentence REDUCED to home incarceration without eletronic monitoring and on such terms set by the U.S. Probation Office as deemed necessary, to be followed by the term os supervised release previously imposed by the Court. An further ORDER Ruiz be released immediately.

DATED: 5/ 29/2020

RESPECTFULLY SUBMITTED,

Edmundo Ruiz #40546-424
FCC Forrest City-Low
P.O.Box 9000
Forrest City, AR 72336
Pro Se

CERTIFICATE OF SERVICE

I Edmundo Ruiz, hereby certify that a true copy of the instant motion and its attached Exhibits were placed in the prison mailing system first class mail postage prepaid and sent on this 29 day of May, 2020, to:

Ass U.S. Attorney's Office
308 Four Seagate Suite
Toledo, OH 43604