# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Case No.: 3:08-CR-00304 |
| Plaintiffs, | ) | |
| | ) | Judge James G. Carr |
| -vs- | ) | |
| | ) | **AMENDED EMERGENCY** |
| **EDMUNDO RUIZ, JR.,** | ) | **MOTION FOR COMPASSIONATE** |
| | ) | **RELEASE PURSUANT TO 18** |
| Defendant. | ) | **U.S.C. §3582(c)(2)(A)** |
| | ) | |

Now comes Defendant, Edmundo Ruiz, Jr., by and through his attorney, John F. Potts, and respectfully moves, pursuant to 18 U.S.C. §3582(c)(1)(A)(I) for compassionate release to home-confinement and/or reduction of sentence based upon extraordinary and compelling circumstances resulting from the COVID-19 Pandemic, which create an immediate and uncontrollable risk to Defendant's life, health and well-being as more fully explained in the following Memorandum. This is an amendment of the Motion [Doc #638] previously filed by Defendant, *pro se*.

Defendant respectfully requests that the Court consider this Motion at the earliest possible time.

Respectfully submitted,

/s/ John F. Potts
John F. Potts (0033846)
Law Office of John F. Potts
420 Madison Avenue, Suite 630
Toledo, Ohio 43604
Phone: (419) 255-2800
FAX: (419) 255-1105
E-mail: jfplaw@ameritech.net
Attorney for Defendant, Edmundo Ruiz, Jr.

## **MEMORANDUM**

On July 14, 2011, Defendant was sentenced by this Honorable Court to serve a sentence of 240 months (copy of Judgment appended hereto as **EXHIBIT A**). Defendant has served 144 months of his sentence, without taking into account any reduction of sentence for "good time." Taking Defendant's "good time" into account, Defendant's projected release date is **January 1, 2026.** Defendant is incarcerated at the Federal Correctional Institution (Low), P.O. Box 9000, Forrest City, AK 72336.

According to the Bureau of Prisons (BOP) website, FCI (Low) Forrest City (Low) FCI City, where Defendant is incarcerated, is the BOP facility most badly affected by the COVID-19 Virus. (*See,* BOP: COVID-19 update appended hereto as **EXHIBIT B**).

On April 22, 2020 Judge Gwin granted class action injunctive relief in favor of prisoners at Elkton FCI who are medically vulnerable to the COVID-19 Virus, requiring that they be removed or transferred from Elkton FCI. Judge Gwin recognized that "Once

the virus is inside the prison, screening measures can be only so effective, and screening will only help identify individuals with active symptoms, not those asymptomatic individuals who can spread the virus undetected." *Wilson v. Williams*, Case No. 4:20-W-00794 (N.D. Ohio, April 22, 2020), Doc. #22, Page *ID* 356 (copy appended hereto as **EXHIBIT C**).

According to the BOP, FCI (Low) Forrest City has an even worse incidence of COVID-19 infection than Elkton, and, like Elkton, the conditions of confinement are close. At FCI Forrest City (Low) 421 inmates are positive for the COVID-19 Virus, as is one staff member with, thankfully, no fatalities as of yet. At Elkton FCI, which was the subject of Judge Gwin's April 22, 2020 Order, there have been 203 positive inmates, 7 positive staff and 7 inmate deaths (**EXHIBIT B**).

Appended hereto as **EXHIBIT D** is a letter from William N. Bichai, M.D. stating that Defendant, is at very high risk for COVID-19 because of his asthma, his not particularly well controlled high blood pressure, and his extremity paresthesia. In this regard, the Center for Disease Control advises that such high risk medically vulnerable individuals implement immediate precautionary measures such as separation from other people as much as possible, avoiding close contact with other people, and keeping a distance of at least six (6) feet from those persons with whom the high risk individual must come into contact. Unfortunately, it is simply not possible for Defendant to implement these precautionary measures while incarcerated at Forrest City (Low) FCI.

The prison environment at Forrest City (Low) FCI simply does not make it feasible for high risk, medically vulnerable individuals, like Defendant herein, to implement the recommended precautions. Defendant lives in a pod with 156 other inmates, 33 of whom are positive for COVID-19, but Defendant does not know which of

3

his fellow prisoners in the pod are positive and which are not. All live in a dormitory like space, 24 hours a day, with 6 toilets, 6 urinals, and 12 showers (only 7 of which actually work).

Defendant and his fellow prisoners lack the ability to sanitize effectively or maintain at least six (6) feet of social distance from one another. The opportunity and means for self care is severely limited. Further, the unfortunate practical reality is that medical care in prisons is not the best even under normal circumstances.

It is recognized that prisons, by their nature, are environments that present significantly greater susceptibility to virus infections in general. *United States v. Rodrigueaz*, Case No. 2:03-CR-00271, 2020 WL 167331 at *1 (E.D. Pa., April 1, 2020). But the present COVID-19 Pandemic is an extraordinary and compelling circumstance far more threatening to health and life than someone in Defendant's position would normally have to confront. Defendant respectfully contends that because of his medical status as a person who is at high risk if he were to become infected with the COVID-19 Virus, extraordinary and compelling circumstances exist which justify Defendant's immediate compassionate release to home confinement pursuant to 18 U.S.C. §3582(c)(1)(A).

This is a very grave situation. In *Wilson v. Williams*, supra. Judge Gwin found that to require prisoners who are at high risk and "medically vulnerable" to COVID-19, to remain incarcerated in an environment such as Elkton FCI would constitute cruel and unusual punishment in violation of the Eighth Amendment. *Id.*, Page ID #366. *See also, United States v. Love*, Case No. 1:14-CR-4-1, Order granting Motion for Compassionate Release, ECF. No. 41 at Page *ID* 154-155 (W.D. Mich. April 21, 2020, (copy appended hereto as **EXHIBIT E**). However, the situation at Forrest City (Low) FCI,

4

where Defendant is in custody is even worse than the situation at Elkton FCI. *See*, BOP COVID-19 update (**EXHIBIT B**). For a high risk, medically vulnerable prisoner, such as Defendant herein, the situation at Forrest City (Low) FCI is unsafe and potentially life threatening.

In light of the foregoing, Defendant respectfully contends that extraordinary and compelling circumstances exist which justify compassionate release of defendant to home confinement pursuant to 18 U.S.C. 3582(c)(1)(A).

Because of the unmanageable threat to health, life and well-being posed by the COVID-19 Pandemic, an increasing number of U.S. District Courts, have recently granted compassionate releases pursuant to §3582(c)c(1)(A) for reasons relating to COVID-19:

1) *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475 (D. Kan. Feb. 21, 2020);

2.) *United States v. Mondoca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. March 3, 2020);

3) *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815 (M.D. Tenn. March 4, 2020);

4) *United States v. Davis*, No. PJM 00-424-2, 2020 WL 1083158 (D. Md. March 5, 2020);

5) *United States v. Perez*, No. 88-10094-1 JTM, 2020 WL 1180719 (D. Kansas March 11, 2020);

6) *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493 (E.D. Va. March 16, 2020);

7) *United States v. Campagna*, No. 16-CR-78, 2020 WL, 1489829 (S,D,N.Y. Mar. 27, 2020);

8) *United States v. Garcia*, No. 95-CR-142, (E.D. Wis., March 27, 2020);

9) *United S/a/es v. Powell*, No. No. 1:94-CR-003 16 (D.D.C, Mar, 28, 2020);

5

10) *United States v. Marin*, No. 15-CR-252, Dkt. No. 1326 (E.D.N.Y. Mar. 30, 2020);

11) *United States v. Muniz*, Case No. 4:09-CR-199, Dkt, No. 578 (S.D. Tex, Mar. 30, 2020);

12) *United States v. Gonzales*, No. 2: 18-CR-0232, 2020 WL 1536 155 (ED, Wash. Mar. 31, 2020);

13) *United States v. Jepsen*, No. 3:19-CV-00073(VLB), 2020 WL 1640232 (D. Conn. Apr. 1, 2020);

14) *United States v. Perez*, No 1:17-CR-005 13, Dkt. 98 (S,D,N,Y., April 1, 2020);

15) *United States v. Rodriguez*, No, 2:03-CR-00271, Dkt. 136 (E.D.Pa., April 1, 2020);

16) *United States v. Foster*, No. 1:14-CR-324, Dkt. 191 (M.D.Pa., April 3, 2020);

17) *United States v. Zukerman*, No. 1:16-CR-194, Dkt. 116 (S.D.N.Y., April 3, 2020);

18) *United States v. Esparza*, No. 1:07-CR-294, Dkt. 124 (D. Idaho, April 7, 2020);

19) *United States v. Plunk*, No. 3:94-CR-036 (D. Alaska, April 9, 2020);

20) *United States v. Clagett*, No. 2:97-CR-265, Dkt. 238 (W.D.Wash., April 9, 2020);

21) *United States v. Sawicz*, No. 1:08-CR-287, Dkt. 66 (E.D.N.Y., April 10, 2020);

22) *United States v. Burrill*, No. 3:17-CR-491, Dkt. 308 (N.D.Cal., April 10, 2020);

23) *United States v. Stahl*, No. 1:18-CR-694, Dkt. 53 (S.D.N.Y., April 10, 2020);

24) *United States v. Tran*, No. 8:08-CR-197, Dkt. 405 (C.D.Cal., April 10, 2020);

25) *United States v. Ben-Yhwh*, No. 1:15-CR-830, Dkt. 206 (D. Hawaii, April 13, 2020);

26) *United States v. Hope*, Case No. 90-CR-6108, Dkt. 479 (S.D.Fla., April 10, 2020);

27) *United States v. Scott*, No. 95-202-CCB-2, 2020 WL 2467425 (D. Md. May 13, 2020);

28) *United States v. Arey*, No. 5:05-CR-00029, 2020 WL 2464796 (W.D. Va. May 13, 2020);

29) *United States v. Kubinski*, No. 3:93-CR-28-1H, 2020 WL 2475859 (E.D. N.C. May 13, 2020);

30) *United States v. Sedge*, No. 16-CR-537(KAM), 2020 WL 2475071 (EDNY May 13, 2020);

31) *United States v. Gutman*, No. RDB-19-0069, 2020 WL 2467435 (D. Md. May 13, 2020);

32) *United States v. Cassidy*, No. 17-CR-116S, 2020 WL 2465078 (W.D.N.Y. May 13, 2020);

33) *United States v. Scott*, No. 95-202-CCB-2, 2020 WL 2467425 (D. Md. May 13, 2020);

34) *United States v. Lopez*, No. 18-CR-2846 MV, 2020 WL 2489746 (D.N.M. May 14, 2020);

35) *United States v. Mattingley*, No. 6:15-CR-00005, 2020 WL 2499707 (W.D. Va. May 14, 2020);

36) *United States v. Williams*, No. 06 CR 451-10, 2020 WL 2494645 (N.D. Ill. May 14, 2020);

37) *United States v. Ginsberg*, No. 14 CR 462, 2020 WL 2494643 (N.D. Ill. May 14, 2020);

38) *United States v. Handy*, No. 3:10-CR-128-8 (RNC), 2020 WL 2487371 (D. Conn. May 14, 2020);

39) *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107 (C.D. Ill. May 15, 2020);

40) *United States v. Gonzalez*, No. 3:17-CR-00062 (JAM), 2020 WL 2511427 (D. Conn. May 15, 2020);

41) *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049 (S.D. Cal. May 15, 2020);

42) *United States v. Johnson*, No. 15-CR-125 (KBJ), 2020 WL 2515856 (D.D.C. May 16, 2020);

43) *United States v. Moore*, No. 3:16-CR-00171-JO, 2020 WL 2561423 (D.N.H. May 18, 2020);

44) *United States v. Bischoff*, No. 17-CR-196-JD, 2020 WL 2561423 (D.N.H. May 18, 2020);

45) *United States v. Anderson*, No. 15-CR-30015, 2020 WL 2521513 (C.D. Ill. May 18, 2020);

46) *United States v. Rountree*, No. 1:12-CR-0308 (LEK), 2020 WL 2610923 (N.D.N.Y. May 18, 2020);

47) *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717 (D. N.M. May 18, 2020);

48) *United States v. Bennett*, No. 05 CR. 1192-1 (NRB), 2020 WL 2539077 (SDNY May 18, 2020);

49) *United States v. Agomuoh*, No. 16-20196, 2020 WL 2526113 (ED Mich. May 18, 2020);

50) *United States v. Schafer*, No. 6:18-CR-06152 EAW, 2020 WL 2519726 (WDNY May 18, 2020);

51) *United States v. Hill*, No. 3:19-CR-00038 (JAM), 2020 WL 2542725 (D. Conn. May 19, 2020);

52) *United States v. Dorsey*, No. CR16-0138-BLW-JCC, 2020 WL 2562878 (W.D. Wash. May 19, 2020);

53) *United States v. Sarkisyan*, No. 15-CR-00234-CRB-15, 2020 WL 2542032 (N.D. Cal. May 19, 2020);

54) *United States v. Bright*, No. 2:15CR00015-005, 2020 WL 2537508 (W.D. Va. May 19, 2020);

55) *United States v. El-Hanaf*, No. 10-CR-162 (KMW), 2020 WL 2538384 (S.D.N.Y. May 19, 2020);

56) *United States v. Copeland*, No. 02-CR-01120 (FB), 2020 WL 2537250 (E.D.N.Y. May 19, 2020);

57) *United States v. Doshi*, No. 13-CR-20349, 2020 WL 2556794 (E.D. Mich. May 20, 2020);

8

58) *United States v. White*, No. 13-CR-20653-1, 2020 WL 2557077 (E.D. Mich. May 20, 2020)

The foregoing list is by no means exhaustive.

Prior to the "First Step" act, the matter of compassionate release was presented to the sentencing court by the BOP in such cases as the BOP deemed appropriate. The First Step Act amended 18 U.S.C. §3582(c)(1)(A) to allow a defendant to file a motion with the District Court for compassionate release after exhausting his administrative remedies/ procedures before the BOP. As amended, §3582(c)(1)(A), reads, in pertinent part, as follows:

> **(c) Modification of an imposed term of imprisonment.** - -
> The court may not modify a term of imprisonment once it has been imposed except that - -
>
> (1) in any case - -
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that - -
>
> (I) extraordinary and compelling reasons warrant such a reduction; or
>
> * * *
>
> And that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and

9

Pursuant to the statute, exhaustion occurs not when all BOP administrative procedures have been exhausted, but 30 days after the request is made to the Warden without being acted upon by the Warden. *See, e.g.*, United States v. Atwi, Case No. 18-CR-20607, 2020 WL 1910152 at *3 (E.D. Mich. April 20, 2020); United States v. Scparta, Case No. 18-CR-578, 2020 WL 19134 at *6 (S.D.N.Y. April 9, 2020).

Indeed, in many cases, District Courts that have found the circumstances of the COVID-19 Pandemic so extraordinary and compelling that they have waived compliance with the exhaustion requirement altogether. *See, e.g.*, United States v. Scparta, *supra*; United States v. Perez, *supra*.; United States v. Ben-Yhwh, Case No. CR15-00830, 2020 WL 1874128/ (D. Haw. April 13, 2020). However, such a waiver does not appear to be necessary in the instant case.

In the instant case, Defendant made his initial request to the Warden of Forrest City FCI (Low) on November 23, 2019 which was returned and then re-submitted by Defendant on March 30, 2020. However, when Defendant became aware that he was at high risk and medically vulnerable for COVID-19, Defendant submitted a new request to Warden D'Wayne Hendrix of Forrest City FCI (Low), specifically requesting compassionate release because of the dangers posed by the COVID-19 in the prison (copy appended hereto as **EXHIBIT F**). On April 14, 2020, the Warden issued a memorandum instructing inmates not to submit any further such request because all inmates would be considered for release or home detention. But, now, well over 30 days later, nothing has happened. So, one way or another, Defendant has sufficiently exhausted his administrative remedies such as to enable this Court to exercise jurisdiction.

Once a prisoner has exhausted his administrative remedies as provided in 18 U.S.C. §3582(c)(1)(A), a motion may be filed with the sentencing court, which is what Defendant has done in the instant case. Defendant's family has retained counsel on Defendant's behalf who has amended the Motion originally filed by Defendant, *pro se*, [Doc #638] to focus more narrowly upon the urgency of the extraordinary and compelling threat to Defendant's life, health and well-being, posed by the COVID-19 Pandemic. The sentencing court is to consider Defendant's Motion with reference to the factors set forth in 18 U.S.C. §3583(a), and "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. §3582(c)(1)(A).

Ostensibly, the applicable policy statements of the Sentencing Commission are found at U.S.S.G. §1B1.13. However, this Guideline provision and the associated Commentary and Application Notes have not been revised since the First Step Act amended Section 3582(c)(1)(A). So, it would appear that the policy statements are outdated. *See*, United states v. Hernandez, Case No. 18-CR-834-04, 2020 WL 1684062 at *2, fin.1 (S.D.N.Y. April 2, 2020); United States v. Gonzalez, Case No. 2:18-CR-0232, 2020 WL 1536155 at *3.

Defendant has now served 12 years of his 20 year sentence. With good time, he has a projected release date of January 1, 2026. While serving his sentence, Defendant has obtained his G.E.D.. In addition to other rehabilitative classes listed on Defendant's Individualized Re-Entry Plan (a copy of which is appended hereto as **EXHIBIT G**), Defendant has recently earned a certificate as an air conditioning technician (copy appended hereto as **EXHIBIT H**). If Defendant is granted compassionate release to home confinement, Defendant has full-time employment waiting for him with Luxury Air Heating & Cooling (*See*, letter attached hereto as **EXHIBIT I**).

11

Defendant is now 42 years old and would be living at 2912 Harmony Drive in Bakersfield, CA 93306, with his fiancé, Margaret Martinez, if Defendant is released to home confinement. Defendant's fiancé is an LPN and works as an infectious disease control nurse. Accordingly, should Defendant experience health problems while under home confinement, his fiancé is well qualified to care for him.

Defendant is not a danger to the community or anyone in it and never has been. Defendant has no history of violence, had no more than 7 criminal history points at the time of his sentencing, and only five (5) infractions during the 12 years he has been in prison, none of which involved any violence. Defendant has submitted a Re-Entry Plan and, as previously mentioned, Defendant has a good job waiting for him if he is released.

Defendant is not the same man that was sentenced 12 years ago. It is widely recognized that the likelihood of recidivism decreases with age. *See, e.g.*, <u>Wilson v. Williams</u>, *supra*. at Page ID #370. But, it is not just that Defendant has gotten older, Defendant has also matured in his thinking and has re-assessed his priorities and ambitions in life. He has participated in programing and undertaken other corrective means to curb his criminal thinking. While incarcerated, Defendant has also advanced his education and acquired job skill training which qualifies Defendant to take advantage of the job opportunity that is presently awaiting him. Defendant has looked ahead and prepared for his eventual release. He has reasonably well paying employment waiting for him when he gets out and has the good fortune to be able to look forward to emotional and psychological support from his fiancè who is a wonderful woman and a very positive influence on Defendant.

## CONCLUSION

For these reasons, Defendant fervently prays for a compassionate release to home confinement at the earliest possible time because of his medical vulnerability to the COVID-19 Virus, which constitute an extraordinary and compelling circumstance for granting Defendant a compassionate release at this time.

Respectfully submitted,

/s/ John F. Potts
John F. Potts (0033846)
Law Office of John F. Potts
420 Madison Avenue, Suite 630
Toledo, Ohio 43604
Phone: (419) 255-2800
FAX: (419) 255-1105
E-mail: jfplaw@ameritech.net
Attorney for Defendant, Edmundo Ruiz, Jr.

**CERTIFICATION**

This is to certify that a copy of the foregoing was filed with the Court electronically this 5th day of June, 2020. Notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ John F. Potts
John F. Potts (0033846)