# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| United States, | ) | Case No.: 3:08-CR-00304-1 |
|     Plaintiff/Respondent, | ) | James G. Carr |
| v. | ) | |
| Edmundo Ruiz, | ) | **Order** |
|     Defendant/Petitioner | ) | |

Pending is the defendant's fourth motion for compassionate release.[1] (Doc. 666). The government has not responded to the current motion. For the reasons that follow, I deny the defendant's motion.

**Background**

On July 23, 2008, a grand jury charged the defendant and about a dozen confederates in a fifteen-count indictment, alleging, *inter alia*, that the defendant was responsible for leading a drug trafficking enterprise ("DTE") for at least a decade. (Doc. 1). The DTE distributed massive quantities of cocaine, heroin, and marijuana throughout Ohio.

On April 9, 2009, the defendant pled guilty to unlawfully using communication facilities to conspire to distribute large quantities of these drugs (Counts 1 and 13 of the Indictment). (Docs. 205, 206, 207, 228, 269). I imposed a mandatory minimum sentence of 240 months on

---

[1] I denied his earlier motions (Docs. 628, 631, 654) in an Order dated December 16, 2020. (Doc. 655) *United States v. Ruiz*, 507 F. Supp3d. 907 (N.D. Ohio 2020).

Count 1 and a concurrent sentence of 48 months on Count 13 under 21 U.S.C. §§ 841(a)(1), 843(b) and (d). (Doc. 487).

The Bureau of Prisons (BoP) calculates the defendant's release date as January 1, 2026. *See,* FEDERAL BUREAU OF PRISONS, FIND AN INMATE, Edmundo Ruiz, https://www.bop.gov/inmateloc (last visited October 7, 2021). The defendant is currently held at FCI Seagoville, Texas, which has about 1,500 inmates. As of October 6, 2021, just one staff member and one inmate at Seagoville were positive for COVID-19. *See,* FEDERAL BUREAU OF PRISONS, COVID-19, https://www.bop.gov/coronavirus/index.jsp (last visited October 7, 2021).

According to the allegations in his various motions, defendant suffers from asthma, high blood pressure and cholesterol, obesity, stage 2 kidney disease, and extremity paresthesia. (Doc. 654, PageID #6932; Doc. 666, PageID #7270-72). I accept, *arguendo,* these facts, without deciding, whether contracting COVID-19 might impact these conditions, either singly or in combination, to jeopardize his well-being.

In addition, in the instant motion the defendant claims entitlement to compassionate release because: 1) His father, age 87, has dementia, his mother, age 83, is medically incapacitated and, his siblings are estranged from his parents, thereby insinuating only he alone can care for them; 2) Recent medical studies indicate that obese persons receive reduced levels of immunity from current COVID-19 vaccines; and 3) Intervening changes in sentencing law would have required a fifteen, rather than a twenty year mandatory minimum sentence and had defendant received this sentence, he would have been released.

Though the government has not responded to the present motion, I take into consideration its prior arguments in opposition to the defendant's request for compassionate release. I accept

the defendant's contention that he has exhausted all administrative remedies as required by 18 U.S.C. §3582(c)(1)(A) having been denied release by the Warden on April 8, 2021. (Doc 666-1).

## Legal Standards

The court's ability to modify a criminal sentence is severely restricted by the applicable statutory provisions. The court:

> ***may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that *** extraordinary and compelling reasons warrant such a reduction***.

*See*, 18 U.S.C. § 3582(c)(1)(A)(i).

Pursuant to the requirements of 28 U.S.C. § 994(t), the U.S. Sentencing Commission promulgated a policy statement setting out the criteria for sentence reduction, which requires:

> (1)(A)  Extraordinary and compelling reasons warrant the reduction***;
> (2)     The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3)     The reduction is consistent with this policy statement.

*See,* U.S.S.G. § 1B1.13

Finally, § 3553(a) lists the sentencing factors a court must consider in making sentencing recommendations, such as:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct; [and]
> (C) to protect the public from further crimes of the defendant***.

18 U.S.C. § 3553(a).

## Discussion

## Extraordinary and Compelling Circumstances

First, the defendant highlights his enhanced risk of serious illness or death if infected by COVID-19. In support, he cites past conditions at Seagoville. Doing so, he disregards the current situation for as of the date of this Order, no inmates and just one staff member has tested positive for the virus. That being so, there is little risk that the defendant will be exposed to or become infected with COVID-19. This undercuts completely his contention that I should grant his motion in light of his manifold ailments.

In addition, the defendant has already contacted and survived COVID-19 and has received the Pfizer vaccine further, These factors moderate the risk of adverse consequences if the virus again infects him.

The defendant cites medical articles to bolster the claim that his obesity enhances his risk of serious illness were he infected again with COVID. Those articles indicate that obesity reduces the effectiveness of vaccination. Any such reduced effectiveness is immaterial. This is so because current conditions at Seagoville render his risk of exposure to and infection from COVID as *de minimis*.

Second, I accept the defendant's contention that his parents need care. But, he has failed to show, despite his claim, that he alone can provide such care.

At the time of sentencing, the defendant had four sisters, all residing in the Toledo area. PSR ¶ 103). His sisters now would be 51, 49, 47, and 44 years old. He simply claims that they are estranged, thereby intimating they are unwilling to care for their parents. He gives no details to support this conclusory contention. Even if I were to overlook the implausibility of the bald assertion that no one else in the family is willing to care for his parents, the lack of supporting

details renders this aspect of his motion entirely unpersuasive.[2] Given the complete absence of factual support, I reject this assertion as grounds for release.[3]

Finally, I likewise reject the defendant's contention that, had the law permitted, I would have sentenced him at the then applicable 180-month mandatory minimum. Given the fact that his Guideline Range was 360 months to life (PSR ¶120), there is very little, if any, possibility that I would have varied downwards by fifty percent from that Range. Thus, the likelihood that the defendant would have been released by now is equally speculative.

In the past, I have not found the defendant's circumstances extraordinary and compelling. And I do not do so now.

## § 3553(a) Factors

Having found the defendant's asserted circumstances do not warrant a modification of his sentence, I turn to the factors I am to consider under 18 U.S.C. § 3553(a).

### (A) Nature and Circumstances of the Offense

The defendant's current 240-month sentence results from his having organized and directed at DTE for about a decade. (Doc. 1). During that time, under his leadership, the organization distributed potentially lethal drugs to those whose addiction it fostered and fueled. Defendant's DTE injected massive quantities of cocaine, heroin, and marijuana into the Toledo community. Consequently, the seriousness of his offenses weighs heavily against granting the relief he requests.

---

[2] The PSR also indicates that the defendant has eight children. Some are now adults, including two daughters (ages 27 and 19) and three sons (ages 26, 23, and 21). PSR ¶ 105. Defendant gives no explanation as to why some of these individuals cannot provide the care his parents need.

[3] Given the lack of evidentiary support for his claim that he alone can care for his parents, I decline to follow the decision in in *U.S. v. McCauley,* 2021 WL 2584383 (W.D. Mo. June 23, 2021). [Referencing defendant's documents to support extraordinary and compelling circumstances when discussing mother's Parkinson's disease and inability to continue caring for her 74-year old husband, a veteran disabled due to Agent Orange exposure. *Id.* *2].

5

### (B) Defendant's History and Characteristics

As the defendant points out, he has no record of violent behavior. Nonetheless, he has a criminal history. The government filed "Information" in this case to establish prior criminal conduct. (Doc. 204). This Information illustrates the defendant has a history of trafficking drugs in the State of Ohio.

Clearly, the defendant did not learn any lessons from his prior criminal conduct and convictions. If anything, after his prior trafficking conviction, he doubled down on his criminal behavior and took his decade-long path leading a major DTE in our area.

Therefore, on balance, this factor weighs against granting the defendant's current motion for compassionate release.

### (C) Need for the Sentence to "Reflect the Seriousness of the Crime, to Promote Respect for the Law, and to Provide Just Punishment for the Offense"

A just punishment reflects the seriousness of criminal conduct and enhances respect for the law. Moreover, it takes into account the consequences of a defendant's crimes and the impact of those crimes on victims, others, and the community at large.

A DTE's immediate victims are the addicts it creates and fosters. Every DTE creates a multitude of indirect victims, but the most and worst affected are children of the addicts. Adults can turn away and move on. But a child, even when he or she becomes an adult, can never get free from what a parent's addiction has done and continues to do.

The worst consequence, and the one that perpetuates the continuing harm of drug trafficking, occurs when an addict's child repeats the pattern and succumbs to dependency.

Within the larger community, a DTE's indirect victims are those whom the addict victimizes to obtain the wherewithal to acquire the drug he or she irresistibly craves. An addict-infested community loses vitality as drugs result in gun crime and gun violence permeates a

community, block by block, neighborhood by neighborhood. Decay displaces vitality. The stain from that decay all too often results in deterioration of neighborhoods, most often those with predominantly minority residents.

That is what the defendant and his confederates did for nearly a decade. The effects of this conduct are lasting and detrimental to the defendant's own community. The fact that the defendant was in the business of distributing some of the most dangerous drugs - cocaine and heroin - shows he has no regard for the well-being for those residents he lived beside or for his community as a whole.

This factor strongly favors denying the defendant's motion for compassionate release.

### (D) Need "to Afford Adequate Deterrence to Criminal Conduct"

Though not a violent individual, the defendant is nevertheless a repeat offender. His criminal history leaves me with no doubt that if he were released, he would encounter many of the same dynamics and scenarios that led to his past criminal conduct. At least for the time being, incarceration is the only way to deter him and reduce the risk of further criminal conduct.

More than once, the defendant resumed drug dealing despite prior imprisonment. There remains enough of a risk that he would be tempted to do so again. So, at the very least, continued incarceration postpones any potential impulse to traffic and distribute drugs again.

This § 3553(a) factor favors denial of his motion.

### (E) Present Danger to the Community

Prior interactions with the criminal justice system did not deter the defendant from engaging in further criminal conduct. Unfortunately, the underlying conviction (*i.e.* organizing others to distribute drugs in the community for nearly a decade) shows me that the defendant is a danger to the community.

There is also the consideration of public deterrence. The public expects, and properly so, that a sentence pronounced will be a sentence served. When reducing a criminal sentence, courts risk erosion of public confidence in and respect for the law. Courts further risk erosion of the public deterrent purpose of sentences if they disregard that expectation.

**Conclusion**

The defendant's fourth motion for compassionate release has no more merit than his first three requests. I find the newly-made assertions no more persuasive than his recycled ones. First, though the defendant has several medical factors that put him at risk *vis-a-vis* a possible COVID-19 infection, his chance of becoming infected appears quite slight. Even if his obesity could put him at greater risk by lowering the effectiveness of vaccination, there presently appears to be little risk of infection while he remains in BoP custody.

I accept the defendant's second contention that his parents are in desperate need of care. But, his claim that he alone can provide that care is implausible on its face and unsupported by anything but his own self-serving statements.

His third contention that I would have given him a fifteen year, rather than a twenty year, sentence is entirely speculative. He was fortunate that I varied as far down from the 360-month bottom of the Guideline Range as I did.

The defendant was directly responsible for ruining countless lives. Not just those whose lives he ruined with the drugs he provided, but the lives of those closest to the addicts, whom he fed and fueled. Most simply put, he fails to show, given what his actions caused and may continue to cause, why I should relieve him of the penal consequences he deserved.

In any event, the defendant has failed to show that his circumstances are either extraordinary or compelling.

For the fourth time, the defendant fails to meet his burden to show that he is entitled to compassionate release. It is, accordingly, hereby

ORDERED THAT the defendant's motion for compassionate release (Doc. 666) be, and the same hereby is DENIED.

Any appeal from this order would have no plausible merit, as jurists of reason could not reasonably dispute either its result or its rationale. Accordingly, an appeal should not be allowed without prepayment of the requisite filing fee.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge